UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ARROWOOD INDEMNITY COMPANY, | ) | Case No.: 1:10 CV 2871 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| THE LUBRIZOL CORPORATION, *et al.*, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Currently pending in the above-captioned case is Defendant The Lubrizol Corporation's

("Defendant" or "Lubrizol") Motion for Summary Judgment (ECF No. 47) and Plaintiff Arrowood

Indemnity Company's ("Arrowood" or "Plaintiff") Cross-Motion for Summary Judgment.  (ECF

No. 51.)  For the following reasons, Defendant's Motion is denied and Plaintiff's Motion is granted.

## I. BACKGROUND

Arrowood brought the above-captioned case against Lubrizol seeking a declaratory judgment

concerning its rights under liability insurance policies it issued to Lubrizol as well as under a

settlement agreement between the parties that concerned Arrowood's obligations to provide

coverage.  (*See* Am. Compl., ECF No. 26-1.)  Specifically, Arrowood claims that, pursuant to both

the policies and the settlement agreement, it has no obligation to defend or indemnify Lubrizol with

respect to certain pollution remediation costs incurred by Lubrizol arising from Lubrizol's

involvement in a pending CERCLA action brought by the United States Environmental Protection

Agency ("EPA").  Lubrizol counterclaimed, requesting a declaratory judgment that Arrowood is

obligated to defend and indemnify Lubrizol.  (Am. Coutercl., ECF No. 54.)

### A. The Patrick Bayou Superfund Action

On September 5, 2002, acting pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the EPA placed the Patrick Bayou Site on the National Priorities List, thus designating it, to use CERCLA's more common name, a Superfund site. (*Id.*; see also Patrick Bayou EPA Listing, Def.'s Ex. D, ECF No. 23-5.)  The Patrick Bayou Site is located near Houston, Texas, and includes, among other industrial plants, Lubrizol's Deer Park facility.   (Site Map, ECF No. 47-5; General Notice Letter p. 2, ECF No.47-3.)  The Site extends beyond the Lubrizol facility and encompasses various wetlands and bodies of water that receive discharges from the Lubrizol facility. (*Id.*)

On October 10, 2002, the EPA sent Lubrizol a General Notice Letter notifying Lubrizol of potential CERCLA liability related to the Patrick Bayou Site.  (General Notice Letter p. 1.)  The 2002 General Notice Letter stated that Lubrizol might be a "Potential Responsible Party" ("PRP") and therefor "may be required to perform investigation and cleanup actions . . ., and may also be responsible for all costs incurred by EPA in investigating and cleaning up the site."  On July 4, 2004, the EPA served Lubrizol and other PRPs with a Special Notice Letter ("2004 Letter"), demanding that Lurbizol and the other PRPs negotiate an Administrative Order on Consent ("AOC") to conduct and finance a Remedial Investigation/Feasibility Study ("RI/FS") for the Patrick Bayou site. (Special Notice Letter, ECF No. 47-4.)  On January 31, 2006, Lubrizol and the other PRPs entered into an AOC with the EPA to conduct a RI/FS.  (AOC, ECF No. 47-4.)  In the AOC, Lubrizol admitted that it had discharged hazardous substances at the Site, (*Id.* at ¶ 12), and admitted that it was a "responsible party" for purposes of CERCLA liability.  (*Id.* at ¶ 23.)   Lubrizol estimates that it has incurred approximately $2.9 million in costs in connection with the Patrick Bayou Site.

### B. The 1994 Settlement Agreement

In 1994, Lubrizol and Arrowood's predecessor in interest entered into a settlement agreement to resolve a declaratory judgment action brought by Lubrizol regarding the extent of the insurer's duties under a number of policies.   (Settlement Agreement, ECF No. 47-11.)  The Settlement Agreement provided:

. . . Lubrizol hereby irrevocably and unconditionally releases all claims that

Lubrizol has or could have asserted against [Arrowood's predecessor in interest]

under the Insurance Policies in connection with:

(a) liability, expenses, and losses arising out of claims, proceedings and

actions made, or which may in the future be made, asserted or filed against

Lubrizol by the United States Environmental Protection Agency, other federal,

state, local or other environmental agencies and private parties for environmental

liabilities including bodily injury and property damage liabilities, arising out of

Lubrizol's alleged acts or ommissions [sic] as a generator, disposer,

owner/operator or transporter of alleged hazardous substances, including, without

limitation, environmental claims as those more fully described in the lawsuit;

(b) the cost of defending any and all claims of liability specified in the

preceding clause; . . .

(*Id.* at ¶ 3.)  The release only applied to claims arising from a list  of "Subject Sites."  (*Id.* at ¶ 4.) "Lubrizol's Deer Park Facility[,] Deer Park, TX" was listed as a Subject Site.  (*Id.* at Ex. B.)

In its Motion, Lubrizol argues that the Settlement Agreement does not release Arrowood from covering Lubrizol's costs and defense in the Patrick Bayou Superfund action. Lubrizol argues

- 3 -

that the Settlement is inapplicable because "Patrick Bayou" is not listed as a Subject Site.  In addition, Lubrizol argues that two pieces of extrinsic evidence constitute "admissions" that the Settlement Agreement does not bar coverage. The first item is a 2004 letter from an Arrowood employee to Arrowood's reinsurer stating that "this site 'Patrick Bayou' was not included in the settlement." (2004 Letter to Reinsurer, ECF No. 47-12.)  The second item is a 2005 email between Arrowood employees that refers to the 2004 letter and requests a status update.  (Bosse Email, ECF. 47-13.)   Arrowood argues that the terms of the Settlement Agreement clearly release Arrowood from covering the Patrick Bayou claim, and that the court should not resort to extrinsic evidence when the language of the agreement is clear.

In their briefs, both parties also discuss the underlying insurance policy.  The court will forego describing the policy and the parties' arguments because its analysis of the Settlement Agreement is wholly dispositive.

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides that:

> A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

- 4 -

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of

the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.*

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts. *Id.* Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW AND ANALYSIS

The Settlement Agreement provides, and the parties agree, that Ohio law governs any dispute over its terms. (Settlement Agreement ¶ 13 ("This Agreement . . . shall be governed by and construed in accordance with the law of the State of Ohio.").)

A settlement agreement is a contract and its terms are construed according to the "usual method[s] of contract construction." *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d 910, 915 (Ohio 2004). The primary objective in construing a contract is to ascertain and give effect to the intent of the parties. *Id.* (citing *Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411, 411 (Ohio 1987)). The intent of the contracting parties is presumed to reside in the language of the contract itself. *Id.* In interpreting the meaning of provisions in a contract, the court considers the contract as a whole instead of a single provision. *Westfield Ins. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). All provisions should be construed together to determine the meaning and the intent of a particular

clause. *Ohio Historical Soc'y v. Gen. Maint. & Eng'r Co.*, 583 N.E.2d 340, 343 (10th Dist. Ohio Ct. App. 1989). Where one interpretation of a disputed provision would nullify or render meaningless another part of the contract, while another interpretation would give effect to all parts or words of the contract, the court will use that latter interpretation. *See e.g., Mapletown Foods, Inc. v. Motorists Mut. Ins. Co.*, 662 N.E.2d 48, 49-50 (Ohio Ct. App. 1995); *Christe v. GMS Mgt. Co.*, 705 N.E.2d 691, 693 (Ohio Ct. App. 1997) (reversed on other grounds). Undefined words are given their ordinary meaning unless another meaning is clearly apparent. *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2004). "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.*

The language of the Settlement Agreement states: Lubrizol "irrevocably and unconditionally releases" Arrowood's predecessor in interest from "all claims that Lubrizol . . . could have asserted . . . in connection with . . . liability, expenses, and losses arising out of claims . . . which may in the future be made . . . against Lubrizol by the United States Environmental Protection Agency . . . for environmental liabilities . . . arising out of Lubrizol's alleged acts or ommissions [sic] as a generator, disposer, owner/operator or transporter of alleged hazardous substances . . . ." (Settlement Agreement ¶ 3.) Lubrizol's irrevocable and unconditional release applies to a list of "Subject Sites"; "Lubrizol's Deer Park Facility" is specifically listed as a Subject Site. (*Id.* at Ex. B.) Therefore, Lubrizol "irrevocably and unconditionally" released Orion from responsibility for "all claims" made by the EPA for "environmental liabilities . . . arising out of" Lubrizol's acts or omissions as a "generator, disposer, owner/operator or transporter" of "hazardous substances" at the Deer Park facility.

Lubrizol contends that the Settlement Agreement does not apply to the Patrick Bayou claim because the "Patrick Bayou Site" is not listed as a Subject Site and "there is no provision for future, unknown sites." (Def.'s Summ. J. Br. 14.) Lubrizol misconstrues the nature of the Settlement Agreement. The Settlement Agreement is not confined to contamination that occurs *at* a Subject Site; rather, the Settlement Agreement applies to contamination claims "arising out of" Lubrizol's actions at the Subject Sites. The Settlement Agreement nowhere requires that the contamination occur *on* the grounds of the Deer Park facility or any other Subject Site. To accept Lubrizol's argument would be to delete the words "arising out of" from the Settlement Agreement. *See Karabin v. State Auto. Mut. Ins. Co.*, 462 N.E.2d 403, 406 (Ohio 1984) ("no provision is to be wholly disregarded . . . unless no other reasonable construction is possible" (quoting *German Fire Ins. Co. v. Roost*, 45 N.E. 1097, 1099 (Ohio 1897)).

The dispositive question, then, is whether Lubrizol's alleged CERCLA liability for environmental contamination at the Patrick Bayou Superfund site "arises out of" Lubrizol's activities at its Deer Park facility. The term "'arising out of' means 'flowing from' or 'having its origin in.'" *Stickovich v. Cleveland*, 7557 N.Ed.2d 50, 69 (8th Dist. Ohio Ct. App. 2001) (*citing Nationwide Mut. Fire. Ins. v. Turner*, 503 N.E.2d 212, 217 (Ohio 1986); *Am. Chem. Soc'y v. Leadscope, Inc.*, 2005-Ohio-2557 ¶ 29 (10th Dist. Ohio Ct. App. 2005); *Nationwide Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 525 N.E2d 508, 511 (10th Dist. Ohio Ct. App. 1987); *see also Tomlinson v. Skolnik*, 540 N.E.2d 716, 720 (Ohio 1989) (holding that "arising out of" is synonymous with "because of," "due to," and "resulting from"), *overruled on other grounds by Schaefer v. Allstate Ins. Co.*, 668 N.E.2d 913 (Ohio 1996). As a leading treatise on insurance law notes, "use of the[] phrase . . . merely requires some causal relation or connection." Lee R. Russ & Thomas F. Segalla, Couch on Insurance §101:52 (3d Ed. 2012).

It is clear that there is a causal connection between Lubrizol's activities at its Deer Park facility and its potential liability for the Patrick Bayou Superfund site. The EPA has alleged – and Lubrizol has acknowledged – that Lubrizol owns and operates a facility "which released hazardous substances or arranged for the disposal or treatment of hazardous substances at the [Patrick Bayou] Site." (AOC ¶ 17, ECF No. 47-5.)  Further, Lubrizol's Deer Park Facility encompasses a part of the Patrick Bayou Site. (General Notice Letter 2, ECF No. 47-3 (stating that "parts of the [Patrick Bayou] Site are included within the facilities of . . . The Lubrizol Corporation.").)   Lubrizol's alleged CERCLA liability obviously "arises out of" its activities at the Deer Park facility.  Such a claim was contemplated by the Settlement Agreement, which releases Arrowood from responsibility for "claims . . .  which may in the future be made . . . against Lubrizol by the United States Environmental Protection Agency . . . ." (Settlement Agreement ¶3(a), ECF No. 47-11.)  The court therefore finds that, pursuant to the Settlement Agreement, Arrowood has no obligation to cover Lubrizol's liability, expenses, or losses resulting from the EPA's pending CERCLA action insofar as they relate to Lubrizol's alleged acts or omissions as a generator, disposer, owner/operator, or transporter of allegedly hazardous substances arising from its Deer Park facility.

Because the language of the Settlement Agreement is clear and unambiguous, the court may not look beyond the four corners of the agreement. *Westfield Ins. Co.*, 797 N.E.2d at 1261. Lubrizol's resort to extrinsic evidence is therefore unavailing.   Accordingly, the court denies summary judgment for Lubrizol, and grants summary judgment for Arrowood, on Arrowood's claim that the Settlement Agreement released Arrowood of any responsibility to cover Lubrizol's claims arising out of the Patrick Bayou Superfund site.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 47) is

denied and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 51) is granted.

IT IS SO ORDERED.


/s/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT


March 30, 2013