UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ARROWOOD INDEMNITY COMPANY, ) | Case No.: 1:10 CV 2871 |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | JUDGE SOLOMON OLIVER, JR. |
| ) | |
| THE LUBRIZOL CORPORATION, *et al.*, ) | |
| ) | |
| Defendants ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Third Party Defendant United States Fire Insurance Company's ("U.S. Fire") Motion for Partial Summary Judgment (ECF No. 75) and Defendant The Lubrizol Corporation's ("Lubrizol") Motion for Continuance Pursuant to Rule 56(d) (ECF No. 79). For the following reasons, U.S. Fire's Motion is granted and Lubrizol's Motion is denied.

**I. BACKGROUND**

Plaintiff Arrowood Indemnity Company brought this case against Lubrizol seeking a declaratory judgment concerning its rights under liability insurance policies it issued to Lubrizol as well as under a settlement agreement between the parties that concerned Arrowood's obligations to provide coverage. (*See* Am. Compl., ECF No. 26-1.) Specifically, Arrowood claimed that, pursuant to both the policies and the settlement agreement, it had no obligation to defend or indemnify Lubrizol with respect to certain pollution remediation costs incurred by Lubrizol arising from Lubrizol's involvement in a pending CERCLA action brought by the United States Environmental Protection Agency ("EPA"). Lubrizol joined U.S. Fire as a Third Party Defendant, requesting a

declaratory judgment that U.S. Fire is obligated to defend and indemnify Lubrizol pursuant to insurance policies U.S. Fire issued to Lubrizol. (3d Party Compl., ECF No. 8.)

**A. The Patrick Bayou Superfund Action**

On September 5, 2002, acting pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), the EPA placed the Patrick Bayou Site on the National Priorities List, thus designating it, to use CERCLA's more common name, a Superfund site. (*Id.*; see also Patrick Bayou EPA Listing, Def.'s Ex. D, ECF No. 23-5.) The Patrick Bayou Site is located near Houston, Texas, and includes, among other industrial plants, Lubrizol's Deer Park facility. (Site Map, ECF No. 47-5; General Notice Letter p. 2, ECF No.47-3.)

On October 10, 2002, the EPA sent Lubrizol a General Notice Letter notifying Lubrizol of potential CERCLA liability related to the Patrick Bayou Site. (General Notice Letter p. 1.) The 2002 General Notice Letter stated that Lubrizol might be a "Potential Responsible Party" ("PRP") and therefore "may be required to perform investigation and cleanup actions . . ., and may also be responsible for all costs incurred by EPA in investigating and cleaning up the site." On July 4, 2004, the EPA served Lubrizol and other PRPs with a Special Notice Letter ("2004 Letter"), demanding that Lurbizol and the other PRPs negotiate an Administrative Order on Consent ("AOC") to conduct and finance a Remedial Investigation/Feasibility Study ("RI/FS") for the Patrick Bayou site. (Special Notice Letter, ECF No. 47-4.) On January 31, 2006, Lubrizol and the other PRPs entered into an AOC with the EPA to conduct a RI/FS. (AOC, ECF No. 47-4.) In the AOC, Lubrizol admitted that it had discharged hazardous substances at the Site, (*Id.* at ¶ 12), and admitted that it was a "responsible party" for purposes of CERCLA liability. (*Id.* at ¶ 23.) Lubrizol estimates that it has incurred approximately $2.9 million in costs in connection with the Patrick Bayou Site.

**B. The 1995 Settlement Agreement**

In 1995, Lubrizol and U.S. Fire entered into a settlement agreement to resolve a declaratory judgment action brought by Lubrizol regarding the extent of the insurer's duties under a number of policies.  (Settlement Agreement and Release, ECF No.50-2.)  The Settlement Agreement "extinguishes any and all obligations that U.S. Fire has or may have to Lubrizol under the Policies in connection with Environmental Claims arising from the Subject Sites . . . ."  Further,

> Lubrizol hereby fully releases and forever discharges U.S. Fire of and from any and all claims, duties, rights, actions, causes of action, liabilities, obligations and demands of every kind and nature, whether known or unknown, whether past, present or future, whether asserted or unasserted, whether at law or in equity, that Lubrizol has ever had, now has, or may have in the future, for damages and costs of any kind . . . in connection with Environmental Claims from the Subject Sites . . . . It is expressly agreed and understood by and between the parties that, should any future obligation arise or be alleged to arise in connection with the Policies with respect to Environmental Claims arising from the Subject Sites . . . , Lubrizol will not assert that those obligations must be met by U.S. Fire, because this Agreement is full, complete, and final.

(*Id.* at ¶ 4.3.) The Settlement Agreement also states:

> Lubrizol expressly assumes the risk that there may be Environmental Claims arising from the Subject Sites that are unknown or unknowable to Lubrizol . . . . Lubrizol nevertheless waives, surrenders and abandons any rights under the Policies with respect to such Environmental Claims arising from the Subject Sites.

( *Id.* at ¶ 4.4.)  "Environmental Claims" are defined as

> any and all past, present, and future Claims *arising from Lubrizol's involvement at the Subject Sites* involving, without limitation . . . any and all past, present and future Claims to recover costs incurred and sums expended, or which may in the future be incurred or expended, for investigation, removal, monitoring, treatment, disposal or containment of contaminants or pollutants of any kind . . . ."

(*Id.* at ¶ 1.8 (emphasis added).)  "Lubrizol Deer Park Facility" is listed as a Subject Site. (*Id.* at ¶ 1.6.)

- 3 -

In its Motion, U.S. Fire argues that the terms of the settlement agreement release it from any obligation to cover the Patrick Bayou claim. Lubrizol argues that the Settlement is inapplicable because "Patrick Bayou" is not listed as a Subject Site.

In their briefs, both parties also discuss the underlying insurance policies. The court will forego describing the policy and the parties' arguments because its analysis of the Settlement Agreement is wholly dispositive.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and provides that:

> A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . .

A party asserting there is no genuine dispute as to any material fact or that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970); *White v. Turfway Park Racing Ass'n, Inc.*,

909 F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  Thus, in most cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."  *Id*. at 252.  However, "[c]redibility judgments and weighing of the evidence are prohibited during the consideration of a motion for summary judgment." *Ahlers v. Scheibil*, 188 F.3d 365, 369 (6th Cir. 1999).

The moving party has the burden of production to make a prima facie showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party can meet its burden of production by either: (1) submitting "affirmative evidence that negates an essential element of the nonmoving party's claim"; or (2) demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim."  *Id*.

If the moving party meets its burden of production, then the non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992).  The non-movant must show "more than a scintilla of evidence to overcome summary judgment"; it is not enough to show that there is slight doubt as to material facts.  *Id*.  Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).

### III. LAW AND ANALYSIS

The Settlement Agreement provides, and the parties agree, that Ohio law governs any dispute over its terms. (Settlement Agreement and Release ¶ 23 ("This Agreement . . . shall be governed by and construed in accordance with the law of the State of Ohio.").)

A settlement agreement is a contract and its terms are construed according to the "usual method[s] of contract construction." *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 820 N.E.2d 910, 915 (Ohio 2004). The primary objective in construing a contract is to ascertain and give effect to the intent of the parties. *Id.* (citing *Kelly v. Med. Life Ins. Co.*, 509 N.E.2d 411, 411 (Ohio 1987)). The intent of the contracting parties is presumed to reside in the language of the contract itself. *Id.* In interpreting the meaning of provisions in a contract, the court considers the contract as a whole instead of a single provision. *Westfield Ins. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). All provisions should be construed together to determine the meaning and the intent of a particular clause. *Ohio Historical Soc'y v. Gen. Maint. & Eng'r Co.*, 583 N.E.2d 340, 343 (10th Dist. Ohio Ct. App. 1989). Where one interpretation of a disputed provision would nullify or render meaningless another part of the contract, while another interpretation would give effect to all parts or words of the contract, the court will use that latter interpretation. *See, e.g., Mapletown Foods, Inc. v. Motorists Mut. Ins. Co.*, 662 N.E.2d 48, 49-50 (Ohio Ct. App. 1995); *Christe v. GMS Mgt. Co.*, 705 N.E.2d 691, 693 (Ohio Ct. App. 1997) (reversed on other grounds). Undefined words are given their ordinary meaning unless another meaning is clearly apparent. *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2004). "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.*

The dispositive question is whether Lubrizol's alleged CERCLA liability for environmental contamination at the Patrick Bayou Superfund site "arises from" Lubrizol's activities at its Deer Park facility. Terms such as "arising from" and "'arising out of' mean[] 'flowing from' or 'having its origin in.'"[1] *Stickovich v. Cleveland*, 757 N.E.2d 50, 69 (8th Dist. Ohio Ct. App. 2001) (*citing Nationwide Mut. Fire. Ins. v. Turner*, 503 N.E.2d 212, 217 (Ohio 1986)); *Am. Chem. Soc'y v. Leadscope, Inc.*, 2005-Ohio-2557 ¶ 29 (10th Dist. Ohio Ct. App. 2005); *Nationwide Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 525 N.E2d 508, 511 (10th Dist. Ohio Ct. App. 1987); *see also Tomlinson v. Skolnik*, 540 N.E.2d 716, 720 (Ohio 1989) (holding that "arising out of" is synonymous with "because of," "due to," and "resulting from"), *overruled on other grounds by Schaefer v. Allstate Ins. Co.*, 668 N.E.2d 913 (Ohio 1996). As a leading treatise on insurance law notes, "use of the[] phrase . . . merely requires some causal relation or connection." Lee R. Russ & Thomas F. Segalla, Couch on Insurance §101:52 (3d Ed. 2012).

It is clear that there is a causal connection between Lubrizol's activities at its Deer Park facility and its potential liability for the Patrick Bayou Superfund site. The EPA has alleged – and Lubrizol has acknowledged – that Lubrizol owns and operates a facility "which released hazardous substances or arranged for the disposal or treatment of hazardous substances at the [Patrick Bayou] Site." (AOC ¶ 17, ECF No. 47-5.) Lubrizol's alleged CERCLA liability therefore "arises out of" its activities at the Deer Park facility, and, pursuant to the Settlement Agreement, U.S. Fire has no

---

[1] As both the Eighth and First Circuits have noted, "in the insurance context courts appear to be unanimous in interpreting the phrase "arising out of" synonymously with the term "arising from . . ." *Spirtas Co. v. Fed. Ins. Co.*, 521 F.3d 833, 836 (8th Cir. 2008) (collecting cases); *Penn-America Ins. Co. v. Lavigne*, 617 F.3d 82, 87 (1st Cir. 2010) (citing *Spirtas*, 521 F.3d at 836).

obligation to cover Lubrizol's liability, expenses, or losses resulting from the pending CERCLA action.

Lubrizol contends that the Settlement Agreement does not apply to the Patrick Bayou claim because the "Patrick Bayou Site" is not listed as a Subject Site. However, the Settlement Agreement does not simply address claims that occur at a Subject Site; rather, the Settlement Agreement applies to contamination claims "arising from" Lubrizol's actions at the Subject Sites. The Settlement Agreement does not require that the contamination occur *on* the grounds of the Deer Park facility or any other Subject Site. *See Seals v. Gen. Motors Corp.*, 546 F.3d 766, 772 (6th Cir. 2007) ("If the parties to a release intend to exclude certain claims or matter, their intention should be made manifest.") (Citing *Task v. Nat'l City Bank*, No.65617, 1994 WL 43883, at *4 (8th Dist. Ohio Ct. App. 1994)). To accept Lubrizol's argument would require the court to adopt an unduly narrow definition of "arising from," an interpretation precluded by both the standard definition of the term and the expansive language of the release. *See Richland Auto Grp., Inc. v. Fifth Third Bank*, 2012-Ohio-3060 ¶ 21 (5th Dist. Ohio Ct. App. 2012) (construing similarly-worded release in light of its "very broad" language).

Both Lubrizol and U.S. Fire present extrinsic evidence in support of their respective interpretations of the Settlement Agreement. But, because the language of the Settlement Agreement is clear and unambiguous, the court may not look beyond the four corners of the agreement. *Westfield Ins. Co.*, 797 N.E.2d at 1261. Lubrizol's request for a continuance pursuant to Rule 56(d) is also unavailing for the same reason: Lubrizol's Motion depends on the premise that additional extrinsic evidence – in the form of depositions and documents produced by discovery – will aid in construing the Settlement Agreement. But "parol evidence cannot be used to demonstrate a 'latent ambiguity'" in the Settlement Agreement. *Shifrin v. Forest City Enters.*, 597 N.E.2d 499, 502 (Ohio 1992) (citation omitted). Accordingly, the court grants summary judgment

- 8 -

for U.S. Fire on its claim that the Settlement Agreement released U.S. Fire of any responsibility to cover Lubrizol's claims arising out of the Patrick Bayou Superfund site.

## IV. CONCLUSION

For the foregoing reasons, U.S. Fire's Motion for Partial Summary Judgment (ECF No. 75) is granted and Lubrizol's Motion for Continuance Pursuant to Rule 65(d) (ECF No. 79) is denied.

IT IS SO ORDERED.

/s/ SOLOMON OLIVER, JR.
CHIEF JUDGE
UNITED STATES DISTRICT COURT

June 5, 2013